UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUN 3 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-424-GWU

SANDRA LOUISE DEAN,                                 PLAINTIFF,

VS.                  **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). It is currently before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO SUMMARY JUDGMENT MOTIONS

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Dean

> Step 4. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.1520(c), 404,1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 CFR 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Dean

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

Dean

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

Dean

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### STANDARDS APPLICABLE TO MOTIONS TO REMAND

In assessing that portion of the plaintiff's brief which could be interpreted as a separate motion to remand, it must be noted the pertinent federal statute provides that:

> The Court may . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. Section 405(g) (emphasis added).

While "good cause" for failure to incorporate such evidence might be established when the additional records were not compiled until after the administrative hearing, Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986), the fact that the plaintiff did not seek to have the record remain open to be able to submit evidence mitigates against such a finding, Willis v. Secretary of Health and Human Services, 727 F.2d 551, 554 (6th Cir. 1984).

To be "material", the documents must be "both relevant and probative", "bearing directly and substantially on the matter in dispute", or "likely to have produced a different administrative result". Huffler v. Heckler, 59 F. Supp. 626, 627 (S.D. Ohio 1984). In order to satisfy this materiality criterion, the claimant must

7

demonstrate that there is a reasonable probability that the Administrative Law Judge (ALJ) would have reached a different conclusion if presented with the new evidence. Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 711 (6th Cir. 1988). In determining whether to remand a case, the Sixth Circuit Court of Appeals has distinguished between new evidence of the claimant's condition at the time of the administrative hearing and evidence of a subsequent deterioration or change in his condition. The former is deemed material; the later is not. See Sizemore, 865 F.2d at 712.

## DISCUSSION

The plaintiff, Sandra Louise Doan, was found by an Administrative Law Judge to have "severe" impairments consisting of recurrent moderate major depressive disorder, a dysthymic disorder, borderline personality disorder, and estimated borderline intellectual functioning. (Tr. 29). Nevertheless, based in part on the testimony of a vocational expert (VE), Ann B. Thomas, the ALJ determined that the plaintiff retained the residual functional capacity to return to her past relevant work as a production assembler and, therefore, was not entitled to benefits. (Tr. 29-32). The Appeals Council declined to review, and this action followed.

Although the ALJ stated in his decision that he accepted a functional capacity consistent with that given by a consultative psychiatrist, Dr. Kevin Eggerman, who reviewed psychiatric treatment records as well as conducting his own examination of the plaintiff, a hypothetical question consistent with Dr. Eggerman's restrictions was

8

not given to the VE at the hearing.[1] However, any error is harmless in view of the fact that the ALJ did present a hypothetical question based on the opinion of the plaintiff's treating psychiatrist, Dr. Leah Hayag, who prepared a form in October, 2003 indicating that the plaintiff would have a "marked" limitation in her ability to work in coordination with or proximity to others, her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to tolerate the stress associated with daily work activity. (Tr. 267-9). In certain other areas, she would have "moderate" or "slight" restrictions. "Marked" was defined on the form prepared by Dr. Hayag, and by the ALJ to the VE, as "an impairment that seriously interferes with the ability to function in a consistent, reliable, and appropriate manner in the workplace." (Tr. 342). The VE testified that such a person would be able to perform the plaintiff's past work as a production assembler, and that there were also other unskilled jobs existing in the economy which the plaintiff could perform. (Tr. 343).

---

[1] Dr. Eggerman indicated that the plaintiff had only a borderline personality disorder and would have, as the ALJ found, a "more than satisfactory to limited but satisfactory" ability to follow work rules, use judgment, function independently, maintain attention/concentration, and maintain personal appearance, a "limited but satisfactory" ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, understand, remember, and carry out detailed but not complex job instructions, behave in an emotionally stable manner, and relate predictably in social situations, and a "limited but satisfactory to seriously limited but not precluded" ability to understand, remember, and carry out complex job instructions or demonstrate reliability. (Tr. 29, 264-5).

9

Dean

In response to questioning from counsel for the plaintiff, the VE stated that, in her opinion, the unskilled work that the plaintiff had done and the other unskilled jobs that she listed would not be precluded by "serious limitations" on the ability to function consistently, reliably, and appropriately in the workplace, on the ability to work in coordination with or proximity to others, or to get along with co-workers or peers without exhibiting behavioral extremes. (Tr. 343-4). Counsel for the plaintiff challenges the VE's reasoning in view of the VE's statements that there was even a greater limitation called "extreme" on Dr. Hayag's assessment form, and she "just wouldn't eliminate the work" based on the lesser restriction. (Tr. 344). However, the plaintiff's current counsel accepted Thomas as a vocational expert (Tr. 340), and her testimony, while clearly not to the plaintiff's liking, is not so far-fetched that it can be rejected out of hand. The finder of fact could reasonably have accepted Thomas's rationale. In view of this, no good cause would be served by remand in the case in order to obtain testimony based on Dr. Eggerman's limitations as accepted by the ALJ.[2]

---

[2]Dr. Hayag's severe restrictions were questionable in light of her treatment notes showing that the plaintiff was consistently given a Global Assessment of Functioning (GAF) score of 60. (Tr. 160, 211,214). A GAF score of 60 represents the upper limit of "moderate" symptoms per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Hayag's office notes also showed that the plaintiff was able to function at home and take care of her children, and while she was said to have a dysphoric mood and a constricted affect, her speech was coherent, her thought processes were goal-directed, she denied suicidal or homicidal thoughts, did not express any delusions, and, with one exception, denied auditory or visual hallucinations (e.g., Tr. 170, 178, 182, 188, 192, 206, 209-10). Dr. Hayag's notes

Dean

The plaintiff also submitted additional evidence to the Appeals Council, and requests a remand for further consideration under Sentence Six of 42 U.S.C. Section 405(g). For post decision evidence to justify a remand, it must be both "new and material" and there must be "good cause" for failing to submit it earlier. Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996). The evidence consists of several different items, all of which were well after the date of the ALJ's March 22, 2004 decision. They include an emergency room record from January 14, 2005, in which the plaintiff complained of her nerves bothering her and feeling as if she could hurt herself or someone else, because her husband had been in jail for one year and she become involved in a dispute with her mother. She stated that she had been "clean from crank" for eight months "until yesterday." Plaintiff's Motion for Summary Judgment, Docket Entry No. 9, Exhibit A. She was diagnosed with "depression/anxiety," and discharged with the medication Vistaril. On January 31,

---

generally also indicate that the plaintiff responded well to medications, but for a variety of reasons, including lack of transportation and an apparently temporary move to Indiana, there were gaps in her treatment and the plaintiff often ran out of medication. (E.g., Tr. 182, 290, 294, 302). Another form from the Comprehensive Care Center (CCC) indicates that the plaintiff had only "slightly low" interpersonal functioning, daily living/personal care functioning, and cognitive/intellectual functioning, while her societal/role functioning and physical functioning were "slightly high." (Tr. 159). A licensed clinical social worker at CCC wrote a letter in December, 2002, reiterating that the plaintiff's GAF was 60, but suggested that she would have a "greatly impaired" ability to function in a work setting due to difficulty being around other people, tolerating stress, and "frequent anxiety attacks." (Tr. 168). A social worker is not an acceptable medical source under 20 C.F.R. Section 404.1513, however. In any case, Dr. Hayag's limitations as given to the VE appear to give the plaintiff the benefit of considerable doubt based on the psychiatrist's office notes, the GAF score, and her inconsistent use of medication.

11

Dean

2005, the plaintiff was evaluated by a psychiatrist at the Trillium Center mental health clinic for complaints of nerves, but it appeared during the course of interview that she was a methamphetamine addict and had been smoking crank every day, and her husband was in jail for manufacturing methamphetamine. The plaintiff points out that the psychiatrist gave her a GAF of 50, reflecting "serious" symptoms per the DSM-IV-TR, and indicated that it was "probably" also her highest GAF for the past 12 months, and suggests that the evidence therefore "relates back" to the period before the ALJ's decision. However, the psychiatrist's diagnostic impression of "methamphetamine dependency with recent remission" in addition to "post traumatic stress disorder" suggests that drug abuse or dependence was a large part of the reason for low score. Substance abuse cannot be a basis for a finding of disability under Public Law 104-121. New evidence is considered material "if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim is presented with the new evidence." Hollon v. Commissioner of Social Security, 447 F.3d 477, 484 (6th Cir. 2006) (internal quotation marks and citations omitted). Therefore, this new evidence is of very dubious materiality and does not provide a basis for remand under Sentence Six.

Other evidence submitted to the Appeals Council includes a psychological evaluation of the plaintiff conducted on June 6, 2005, over a year after the ALJ's decision, which produced a verbal IQ score of 73, a performance IQ of 72, and a full-scale IQ of 70. Plaintiff's Motion for Summary Judgment, Docket Entry No. 9, Exhibit

12

Dean

B. The plaintiff argues that the ALJ erroneously declined her request to obtain IQ testing, and that the new evidence shows that disability should have been considered under the Commissioner's Listing of Impairment 12.05C for mental retardation. However, the ALJ's rationale for declining to order cognitive testing based on the plaintiff's work history, daily activities, and presentation at the administrative hearing, along with Dr. Eggerman's opinion that the plaintiff had an estimated borderline IQ and Dr. Hayag's opinion that her cognitive/intellectual functioning was only "slightly low," was more than reasonable. (Tr. 26). Even the new evidence of a full-scale IQ of 70 was described by the psychologist as reflecting "borderline intellectual functioning," and this, in combination with the lack of evidence of significantly subaverage intellectual functioning prior to age 22, clearly takes the plaintiff's case out of the realm of LOI Section 12.05C. See Foster v. Halter, 279 F.3d 348 (6th Cir. 2001).

The decision will be affirmed.

This the _30_ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE

13